# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JEFFREY WILSON,

                Plaintiff,

                                        Case No. 22-cv-

-v-                                    District Judge:

                                        Magistrate Judge:

BARRY-EATON DISTRICT HEALTH
DEPARTMENT,

                Defendant.

_____/

LOUIS B. EBLE, PLLC
Louis B. Eble (P59368)
Attorneys for Plaintiff
838 W. Long Lake Road, Suite 100
Bloomfield Hills, MI  48302
(248) 480-4454
Fax:  (800) 856-0447
leble@louisbeblepllc.com

_____

## **COMPLAINT AND JURY DEMAND**

Plaintiff JEFFREY WILSON, through his attorneys, Louis B. Eble, PLLC,

brings this Complaint for violation of the Family and Medical Leave Act, 29 U.S.C.

§ 2602, *et seq*. (FMLA); violation of the Michigan Elliott-Larsen Civil Rights Act,

MCLA § 37.2101, *et seq.* (age discrimination) (ELCRA); and violation of the Michigan Persons with Disabilities Civil Rights Act 37.1101, *et seq.* (PWDCRA).[1]

## PARTIES AND JURISDICTION

1.    Plaintiff is a resident of the United States and resides within the Western District of Michigan.

2.    Defendant Barry-Eaton District Health Department ("BEDHD") is a public health agency with its principal place of business in the Western District of Michigan. Defendant further conducts regular and systematic activities in the State of Michigan within the Western District of Michigan and has continuously had at least 50 employees at all relevant times.

3.    Subject matter jurisdiction is founded upon 28 U.S.C. § 1331, which gives district courts subject matter jurisdiction over all civil actions arising under the laws of the United States, and 29 U.S.C. § 2617, which gives federal court

---

[1] Plaintiff has filed a Charge with the Equal Employment Opportunity Commission pursuant to the Americans with Disabilities Act and Age Discrimination in Employment Act, which are pending. This lawsuit was filed prior to the EEOC's issuance of a right to sue letter because of a one-year contractual limitations period contained in the Plaintiff's employment application, which the Defendant has refused to waive. The problem with the forced one-year contractual limitations period was exacerbated because Plaintiff delayed seeking nonunion counsel due to a provision in the Defendant's Collective Bargaining Agreement stating that if an employee seeks redress pursuant to a statutory or administrative authority the grievance would be withdrawn and any relief forfeited. This provision is retaliatory as a matter of law. *See Watford v. Jefferson Cnty. Pub. Sch.*, 870 F.3d 448 (6th Cir. 2017).

jurisdiction of claims raised under the Family and Medical Leave Act (FMLA). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims of discrimination in violation of the Elliott-Larsen Civil Rights Act and Persons With Disabilities Act.

4.      The discriminatory employment practices and all other acts alleged in this Complaint occurred within the Western District of Michigan.

5.      Defendant is an employer and Plaintiff was its employee within the meaning of the FMLA, ELCRA and the PWDCRA.

6.      Venue is proper in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391( b)(2), as this is the district in which the events giving rise for the claims occurred.

## <u>GENERAL ALLEGATIONS</u>

7.      Plaintiff began his employment with Defendant on January 3, 2012, as a Sanitarian I. The position title was later changed to Environmental Health Specialist ("EHS").

8.      As a Sanitarian/EHS, Plaintiff, among other duties, performed well and septic inspections.

9.      Although normally there is an onsite review to determine if an area is appropriate for drilling, there are times when there is an office review but not an onsite review prior to the dig. This is in accordance with Defendant's written

3

procedures, which state that onsite reviews may be done "either during the pre-drilling office review, during drilling while conducting a random construction inspection, or at a final inspection."

10.    Plaintiff performed his job diligently and satisfactorily. Up until the time of his discharge, Plaintiff had not received discipline in years and pursuant to the Collective Bargaining Agreement between the Defendant and the Plaintiff's Union, the Plaintiff had no disciplinary history on his record.

11.    Plaintiff was diagnosed with cancer in March of 2021.

12.    In June of 2021, Plaintiff began taking intermittent leave pursuant to the FMLA for radiation and chemotherapy treatment and was taken out of the field.

13.    During the time Plaintiff was taking intermittent FMLA leave and undergoing treatment, his supervisor, Environmental Health Director Jay Vanstee, repeatedly made comments to Plaintiff, such as "How long before you retire? You must be burned out."

14.    Plaintiff was cleared to return to the field, on or about October 4, 2021.

15.    Plaintiff was sick on or about the morning of October 13, 2021, related to his cancer and recovery. As a result, he was not able to report to work until approximately 2:00 p.m. that day. The five hours Plaintiff was not able to work that day was designated as FMLA intermittent leave by the company.

16.    Despite being sick and on intermittent FMLA leave, Plaintiff received

4

a call from a well driller, who was onsite to drill a well for a family that had no water, seeking approval to drill a well.

17.     Plaintiff had known the well driller for approximately ten years, knew he had a stellar reputation, was a qualified septic system inspector, and had a great deal of experience locating septic systems. After discussing the proposed drill with the well driller in detail, Plaintiff was satisfied with the proposed drill and gave the well driller verbal approval.

18.     The well was successfully drilled and produced safe water.

19.     On or about November 5, 2021, Plaintiff was called into a meeting with his supervisor Vanstee and another supervisor, Jodi Pessell, and questioned about the events on October 13, 2021. Plaintiff told them exactly what he did. They then said that issuing a verbal approval prior to the drill was a mistake (although it had been done in the past and was in accordance with the company's written policy). Plaintiff told them he was not aware there was a change in policy and advised them that he would not have given verbal approval if he had known about the change. They thanked Plaintiff for his honesty and adjourned the meeting.

20.     Vanstee informed Plaintiff he was going to receive some level of discipline for giving verbal approval for the drill but repeatedly told Plaintiff that he was not recommending discharge.

21.     Nevertheless, on or about November 10, 2021, despite the fact that

5

Defendant utilizes progressive discipline and that this was Plaintiff's first alleged offense, Vanstee fired Plaintiff.

22.     Other Sanitarians/EHS, who were younger, not disabled or did not take FMLA leave, gave verbal approval to drill a well, both before and **after** the purported unwritten change in policy, were not discharged or otherwise disciplined.

23.     Upon information and belief, Plaintiff is the only Sanitarian/EHS employed by Defendant who was terminated for giving verbal approval to drill a well.

24.     Plaintiff was replaced by Mike Kelly, a significantly younger, less qualified person.

25.     The reason given for Plaintiff's discharge was pretextual. Plaintiff was discharged because of his disability, age (63), and in retaliation for taking intermittent FMLA leave to seek treatment for his disability.

**COUNT I**
**FMLA RETALIATION**
**<ins>Family and Medical Leave Act 29 U.S.C. § 2601, *et seq.*</ins>**

26.     Plaintiff restates and incorporates here all previously stated allegations.

27.     Plaintiff was engaged in statutorily protected conduct when he missed work because of and to obtain treatment for a serious health condition for which he had approved FMLA time.

28.     Defendant was aware that Plaintiff was taking time of due to a serious

6

health condition.

29.     Defendant retaliated against Plaintiff for exercising those rights by discharging him, as well as other actions.

30.     As a direct and proximate cause of the foregoing, Defendant caused Plaintiff damages, including, but not limited to, loss of earnings and earning capacity, and emotional distress.

**COUNT II**
**DISABILITY DISCRIMINATION AND RETALIATION**
**Michigan Persons with Disabilities Civil Rights Act 37.1101 *et seq*.**

31.     Plaintiff restates and incorporates here all previously stated allegations.

32.     Plaintiff suffers a serious medical condition, cancer of the larynx of which Defendant is aware.

33.     Plaintiff's medical condition affected his daily living and major bodily functions, including speech, weight loss, significant hearing loss, sense of taste, and ability to chew, which required continuous treatment.

34.     The severity of Plaintiff's medical condition required Plaintiff to take short intermittent leaves for treatment and recovery.

35.     As such, Plaintiff is a person protected under the PWDCRA because he is disabled, regarded as disabled, and/or because he has a history of disability.

36.     With or without accommodation, Plaintiff has always been well-qualified for his position.

37.    Plaintiff requested accommodation and used time off for treatment and recovery.

38.    Requesting such accommodation and taking the accommodation constitutes protected activity.

39.    Defendant punished Plaintiff because of his disability and because he exercised his statutory rights by discharging him.

40.    Defendant discriminated against Plaintiff because of his disability.

41.    Defendant retaliated against Plaintiff because of his disability and because he took leave for treatment for is disability.

42.    As a direct and proximate cause of the foregoing, Defendant caused Plaintiff damages, including, but not limited to, loss of earnings and earning capacity, mental and emotional distress, including severe mental anguish, humiliation and embarrassment, physical distress, and the loss of the ordinary pleasures of life.

### COUNT III
### AGE DISCRIMINATION
### Michigan Elliott-Larsen Civil Rights Act, MCLA § 37.2101, *et seq*.

43.    Plaintiff restates and incorporates here all previously stated allegations.

44.    While employed by Defendant, Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants and/or employees, said acts being made unlawful by the Elliott-Larsen Civil Rights Act, *et seq*.

8

45.     Defendant subjected Plaintiff to disparate treatment because of his age, to-wit:  63 years old, said acts being made unlawful by the Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq*.  Such acts include, but are not limited to, terminating Plaintiff.

46.     Younger employees who had worse performance than Plaintiff were not terminated and were not subjected to the disparate treatment as set forth herein.

47.     Plaintiff was replaced by a younger, less qualified employee.

48.     Defendant, by and through its agents, servants and/or employees violated the ELCRA by discharging and otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition or privilege of employment because of his age.

49.     As a direct and proximate result of Defendant's violation of the ELCRA, MCL 37.2101, *et seq*., Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

50.     As a further direct and proximate result of Defendant's violation of the ELCRA, MCL 37.2101, *et seq*., Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been

required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff Jeffrey Wilson prays that this Honorable Court grant the following remedies:

<u>**RELIEF REQUESTED**</u>

Plaintiff seeks all available relief, including but not limited to:

a.  lost wages, benefits, perquisites, including as increased since his separation;

b.  any other compensatory economic and non-economic damages;

c.  statutory, liquidated and punitive damages;

d.  attorney fees and costs;

e.  injunctive relief; and

f.  award such other relief as this Court deems just and proper.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and all relief requested in this complaint.

Respectfully submitted,

**LOUIS B. EBLE, PLLC**

s/Louis B. Eble
Louis B. Eble (P59368)
Louis B. Eble, PLLC
838 West Long Lake Road, Suite 100
Bloomfield Hills, MI 48302
(248) 480-4454
leble@louisbeblepllc.com

Dated:  November 3, 2022

## **JURY DEMAND**

Plaintiff demands a jury trial in the above-captioned matter.

Respectfully submitted,

**LOUIS B. EBLE, PLLC**

s/Louis B. Eble
Louis B. Eble (P59368)
Louis B. Eble, PLLC
838 West Long Lake Road, Suite 100
Bloomfield Hills, MI 48302
(248) 480-4454
leble@louisbeblepllc.com

Dated:  November 3, 2022

12